## Brewer, Appellant, *v.* Sullivan County.

*Negligence—County bridge—Repair of bridge.*

A county is not required to open another highway for the convenience of the traveling public while its officials and employees are engaged in erecting a new bridge on the site of an old one, or in repairing the approaches to it. If the county opens such a highway, and by reason of defects in it, a person is injured, the county is not liable for the injury.

Argued March 18, 1901. Appeal, No. 155, Jan. T., 1901, by plaintiff, from order of C. P. Sullivan Co., May T., 1897, No. 47, refusing to take off nonsuit, in case of Reuben H. Brewer v. The County of Sullivan. Before McCOLLUM, C. J., MITCHELL, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before DUNHAM, P. J.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off, DUNHAM, P. J., filing the following opinion :

At the trial of this case the evidence disclosed the following state of facts:

Upon the main direct road, in fact the only road, between Dushore and Laporte, where the road crosses the Loyalsock creek, at a place known as Ringdale, there is a county bridge, erected by the county many years ago, and since then, of course, maintained at the expense of the county. In the summer of 1896 this bridge across the Loyalsock became in such a state of dilapidation, and the abutments were so cracked and dangerous, that the county commissioners undertook to replace the old wooden structure by a new iron bridge, and so took down the old superstructure and closed up the road on either side of the bridge, or the place where the bridge had been. Owing to the banks of the creek at and near the place where the bridge had been, it was impossible for any one to attempt even to reach the creek, with any kind of a vehicle, near the site of the bridge. The county commissioners, or at least some of them, went up the creek some forty rods and cleared out and opened up an old

ford road, that had been used some other time when the bridge was out of repair, or at its former construction.

The plaintiff in this case had been shown, as we remember the evidence, this route across the creek at one time by one of the county commissioners.

The plaintiff resided at Thorndale, and upon the day the accident happened, had driven from Thorndale to Dushore across the creek over this route opened by the county commissioners. And in returning in the afternoon, with two horses and light buckboard wagon, upon which he was riding, along with a lady passenger, together with some groceries and provisions, in descending the hill leading from the main public road to the fordway, it being some eight to twelve rods from the public road to the creek along the route opened by the commissioners, the neck yoke strap, or the leather strap on the neck yoke, through which the wagon tongue, or pole, passes, and which is the only means provided in light wagons for holding back the wagon, broke, allowing the wagon to run against the team; and in attempting to hold the wagon back off from the horses, by catching one of the wheels, the plaintiff injured the muscles of his arm, and perhaps received other injuries. The character of the injuries is not so material to this issue. From the evidence, it appears that this road, opened by the commissioners, leaves the public road near the bridge, on the Laporte side of the creek, going along up the creek bank in an old road leading to a grist and sawmill, for some thirty or more rods, then crosses the creek; coming out upon the Dushore side of the creek, it is opened for a distance of some eight to twelve rods from the creek to the public road, where it intersects the public road some forty rods or more from the bridge. The road between the public road and creek on the Dushore side of the creek is exceedingly steep, crooked and dangerous.

The evidence also clearly shows that the only route from Thorndale to Dushore is over this public road crossing the Loyalsock at Ringdale.

On the part of the defendant it was claimed that the plaintiff could not recover for two reasons:

1. There is no law authorizing the county commissioners to construct this road around the bridge and open it up for public travel, and that in so doing they could not bind the county

either for the work put upon it or for any injuries received by persons in attempting to pass over the road.

2. That the way, or route, was so notoriously bad, steep, crooked and dangerous, and known so to be by the plaintiff, that he was guilty of contributory negligence in attempting to pass over the same, and therefore cannot recover.

We will consider the last of these two reasons first. It is very true that the evidence does show that the road where the accident happened was exceedingly, even dangerously, steep, and very crooked, having abrupt turns, or short curves, in the steepest portion of the road, thereby adding to the danger in traveling, especially in descending the hill. It is also equally true that the plaintiff was fully acquainted with the condition of the road, and that he was a man of judgment and an expert teamster. We cannot, however, in view of the fact of this being the only route between Thorndale and Dushore, say that plaintiff was guilty of negligence in attempting to pass over it at all. We feel it is for the jury to say, under all the circumstances in the case, considering the necessities the plaintiff was under to go to Dushore and return, whether his necessities were such as would justify the risk in attempting to pass over this road.

Upon the first point, however, we must confess we have been unable to find any law or decision that causes us to change our mind in regard to the ruling made by us at the trial. All the authorities cited by counsel, or that we have found, on the other hand strengthen us in the opinion entertained by us at the trial.

In this state, under our general road laws, outside of cities and boroughs the supervisors have charge of the roads and highways after they have been laid out and ordered opened by the court of quarter sessions of the county.

It has been repeatedly decided by our Supreme Court that after a public road has been once opened by the supervisors of the township, that they, the supervisors, have no further power or authority over it in regard to changing its location; that neither the fact that it was not originally opened upon the route or place it was originally located by the viewers, nor the occurring of some sudden emergency, will authorize them to change its location or to attempt to locate it in another place than the

one opened. In fact, that, in attempting to open a new route in any of these cases, they have no more right or authority in the premises than any other citizen. See Holden v. Cole, 1 Pa. 303, McMurtrie v. Stewart, 21 Pa. 322, Furniss v. Furniss, 29 Pa. 15, Clark v. Com., 33 Pa. 112, and Van Buskirk v. Dawley, 91 Pa. 423.

Many other cases might be cited to the same effect.

If, then, this route had been opened by the supervisors of Laporte township, in which the road or ford is situated, the officers provided by law for keeping the roads open and in repair, the foregoing decisions would show that the supervisors had no authority to make the change; and had the plaintiff brought suit against Laporte township, the plaintiff could not have recovered; because the supervisors had no authority to make the change in the route of the public road, and it is incumbent upon every person attempting to hold any municipality responsible for injuries received by him in traveling, to show that he received it while upon a public highway; that it was a part of the public highway of that municipality, and that the officers thereof were negligent in not keeping it in repair. In other words, the very foundation of the action is negligence. And it is incumbent upon the plaintiff to establish that the injury was received upon such a highway as the municipality against which the suit is brought was legally bound to keep in repair, and that it was through the negligence of the officers thereof, in not performing the legal duties devolving upon them, that the injury was sustained. This action, however, is not brought against the township of Laporte, but against the county of Sullivan, and we must consider the authority of the county commissioners to open, maintain and keep in repair the public roads and bridges of the county. The duties of county commissioners are entirely statutory. They have just such powers and authority as the statute confers upon them, and no more.

It is only necessary for us to consider the powers and duties conferred upon them in reference to the roads, if any, and bridges. We do not deem it necessary in this case to go over the various acts of assembly, giving the different acts conferring duties upon county commissioners in regard to bridges (there are no acts conferring any authority upon county commissioners in regard to the roads other than bridges and their

approaches), but shall content ourselves, rather, with giving the substance of the various statutes upon the subject. And that is, to erect and maintain such bridges, including the artificial approaches necessary to be constructed in order to use the bridge, as are declared county bridges, after the same have been located and recommended, by viewers appointed by the court of quarter sessions of the county, and approved by the court, the grand jury and commissioners of the county. Their whole authority consists in constructing and maintaining the bridge, including the approaches, at the point laid out by the viewers and approved by the court, grand jury and commissioners. Outside of this they have no more authority over the roads in the county than any other citizen of the county.

If the bridges they are required to keep up become dangerous, so they need repair, and in repairing or reconstructing them they have to be taken down or otherwise rendered unfit for use, they are to close up the road and prevent the public from being injured in attempting to use the bridge. But nowhere is there any authority given to build roads to avoid the bridge or to supply the place of the bridge while being repaired.

Counsel for the plaintiff have cited a number of cases to show that persons dealing with public officers in the apparent scope of their authority, can recover against the county or township the officers represent. As, for instance, where supervisors employed workmen to change a public road, the court allowed these employees of the supervisors to maintain an action against the township for their pay, because the supervisors had general charge of the roads of the township, and workmen employed by the supervisors were not required to inquire whether the supervisors were opening the road upon the proper route or not. They were agents for the township, and within the line of their supposed authority as officers of the township. The township could, however, surcharge the supervisors with the amount. For the same reason a person who rented a house to the county commissioners for use of a county officer was allowed to recover against the county. In the case before us there is nothing to indicate that the county commissioners were acting within the general scope of the authority conferred upon them. No law authorized the county commissioners to construct roads or change the route of public roads. And the plaintiff cannot set

up that he supposed the county commissioners had authority to make the change in the public road, as they did attempt to make temporarily, because every one is supposed to know the law.

We are clearly of the opinion the county commissioners, by making a way temporarily around the bridge, could not make the county responsible for an injury received by one in attempting to travel over this route. See Township of Newlin v. Davis, 77 Pa. 317, where it is held that the "County is responsible only for bridges which it erects by virtue of the act of assembly."

For the reasons heretofore given, we must hold that we committed no error in granting the compulsory nonsuit in this case, and therefore we must discharge the rule granted to take off the same.

Rule to show cause why compulsory nonsuit should not be stricken off discharged.

*Error assigned* was refusal to take off nonsuit.

*E. J. Mullen,* for appellant.

*T. J. Ingham,* with him *F. H. Ingham,* for appellee.

PER CURIAM, May 27, 1901:

It is very evident that the learned judge of the court below did not err in refusing to take off the nonsuit. The county was not responsible for the injury the plaintiff received, and for that reason he could not maintain his suit. It was not required that the county should open another highway for the convenience of the traveling public while its officials and employees were engaged in erecting a new bridge on the site of the old one, or in repairing the approaches to it. No statute brought to our notice imposes such an obligation or duty. In the opinion of the learned judge refusing to set aside the nonsuit there is a clear vindication of his action and a complete answer to the appellant's contention. On that opinion we may safely rest the judgment.

Judgment affirmed.